FILED

2009 Jan-16  AM 09:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

FRIENDS OF HURRICANE            ]
CREEK, et al,                   ]
                                ]
    Plaintiffs,                 ]
                                ]
    vs.                         ]   7:08-CV-01587-LSC
                                ]
SDW, INC.,                      ]
                                ]
    Defendant.                  ]

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion to dismiss, or in the alternative, to stay filed by Defendant SDW, Inc. ("SDW") on September 22, 2008.  (Doc. 6.)  Friends of Hurricane Creek and John Wathen ("Plaintiffs") sued SDW under Section 301 of the Clean Water Act, 33 U.S.C. § 1311.  Plaintiffs claim that SDW failed to comply with its National Pollutant Discharge Elimination System ("NPDES") permit by failing to implement effective Best Management Practices ("BMP") over a period from January to May 2008, resulting in the pollution of a navigable

waterway.  (Doc. 1.)  The issues raised in Defendant's motion have been

fully briefed by all parties and are now ripe for decision.  Upon due

consideration and for the reasons stated herein, the motion to dismiss

will be will be granted to the extent Plaintiffs seek civil penalties and

denied to the extent Plaintiffs seek declaratory and injunctive relief.

II.     Facts.[1]

        Section 402 of the Clean Water Act, 33 U.S.C. § 1342, establishes

the  NPDES permit program, administered in Alabama by the Alabama

Department of Environmental Management ("ADEM") under the approval

of the U.S. Environmental Protection Agency.  SDW is currently engaged

in the construction of a residential subdivision, Williamsburg ("facility"),

located in Cottondale, Tuscaloosa County, Alabama.  Sediment and

pollutants in stormwater runoff from the facility have the potential to

discharge into Cottondale Creek, a state waterway classified for Fish &

Wildlife.  Pursuant to ADEM regulations, SDW is required to register with

---

[1]For the purposes of this opinion, the facts are accepted as stated in the findings of the Alabama Department of Environmental Management and as alleged in the complaint. Recitation of these facts in this opinion is not to be construed as a verification that the allegations are true.

the ADEM before commencing regulated discharges of treated stormwater from the facility.        On August 16, 2004, SDW requested a permit for regulated disturbance activities and discharges of treated stormwater from the facility.  ADEM granted permit ALR1658456 on September 1, 2004.  SDW re-registered on August 4, 2005, and again on January 31, 2007.  The January 2007 registration was found to be incomplete, and re-registration was not granted until January 28, 2008, when SDW provided a completed registration.        During a May 25, 2006 inspection, ADEM discovered significant accumulations of sediment resulting from discharges at the facility.  During a December 18, 2007 inspection, ADEM documented further failures to properly implement and maintain effective BMPs.  In response to these two failed inspections, ADEM notified SDW of its deficiencies and required that the company implement new BMPs to alleviate these violations.  As of May 16, 2008, SDW had failed to respond to ADEM's requirements.

ADEM commenced an action against SDW with a letter on March 24, 2008, proposing a Consent Order in which SDW would agree to take certain steps to alleviate the problems at the facility without need for

further enforcement action.  ADEM issued a proposed Administrative

Order on May 28, 2008.  Finally, on September 5, 2008, ADEM entered

Administrative Order 08-203-MNPS requiring SDW to take certain actions

to comply with environmental laws or face penalties up to $25,000 per

day for each continuing violation.  The Administrative Order stated that

SDW's discharges between September 1, 2006, and January 27, 2008,

were not authorized and the result of ineffective BMPs.  ADEM ordered

that SDW pay $20,000 in civil penalties, implement BMPs to prevent to

the maximum extent practicable discharges of pollutants into State

waters, and take immediate action to insure future compliance with all

Department regulations and environmental laws.

Meanwhile, the plaintiffs in this action filed a notice of intent to

file suit under the Clean Water Act against SDW on May 20, 2008.  On

September 2, 2008, plaintiffs filed a complaint alleging the following

categories of violations:  1.  failure to implement BMPs on various dates

between January 30 and August 26, 2008; 2.  failure to maintain effective

BMPs on various dates between January 30 and August 26, 2008; 3.

discharging pollutants not effectively treated to the maximum extent

practicable on various dates between January 29 and August 26, 2008;

and 4.   failing to ensure that BMPs do not cause or contribute to a

violation of state water quality standards for turbidity, on various dates

from January 30, 2008 to August 27, 2008.  SDW maintains that this action

is barred by 33 U.S.C. § 1319(g)(6), and thus should be dismissed for lack

of subject matter jurisdiction.

III.   Discussion.

Originally enacted in 1948 for the control of water pollution,

enforcement of the Clean Water Act is given primarily to the states.  The

Act was amended in 1972 to allow citizens to bring civil actions in federal

court against polluters.  *See* 33 U.S.C. § 1365 (2008).  There are,

however, limitations on the right to sue.  33 U.S.C. § 1319(g)(6) states in

relevant part:

(A) Limitation on actions under other sections

[A]ny violation–

....
(ii)  with respect to which a State has commenced and is
diligently prosecuting an action under a State law
comparable to this subsection, or

> (iii)  for which the Administrator, the Secretary, or the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be,

shall not be the subject of a civil penalty action under subsection (d) of this section or section 311(b) or section 505 of this Act [33 USCS § 1321(b) or 1365].  33 U.S.C. § 1319(g)(6)(A)(ii) & (III) (2008).

33 U.S.C. § 1319(g)(6)(B) lifts this bar to litigation in regards to citizen suits if one of two exceptions applies:  1.  a civil action has been commenced; or 2.  notice of a violation has been given prior to the commencement of an enforcement action and the party giving the notice files suit within 120 days of that notice.  33 U.S.C. § 1319(g)(6)(B) (2008); *Black Warrior Riverkeeper, Inc. v. Cherokee Mining*, LLC, 2008 U.S. App. LEXIS 23296 *17 (11th Cir. Nov. 13, 2008).

Because ADEM began an enforcement action under state law comparable to 33 U.S.C. § 1319  on March 25, 2008, and the plaintiffs did not send their notice of intent to file suit until May 20, 2008, a plain reading of the Clean Water Act would appear to bar this suit.  The plaintiffs make several arguments as to why this initial judgment is

incorrect.  First, they note that the preclusive effect of 33 U.S.C. §

1319(g)(6)(A) applies only to violations which the state is diligently

prosecuting, a limitation they claim does not apply to all of the violations

covered by the plaintiffs' complaint.  Secondly, the Plaintiffs argue that

preclusion extends only  to suits seeking penalties and not those seeking

declaratory or injunctive relief.

A.    Preclusion and Diligent Prosecution.

SDW argues that Plaintiffs' complaint is precluded because the

violations in question are currently being diligently prosecuted by ADEM.

33 U.S.C. § 1319(g)(6) is clear on its face that preclusion applies only to

actions premised on violations "with respect to which a State has

commenced and is diligently prosecuting an action."  33 U.S.C. §

1319(g)(6)(A)(ii) (2008).  In *Cahaba River Society v. Gold Kist, Inc.*, the

court stated, "[T]he plain language of § 1319(g)(6)(A) compels the

interpretation that 'any violation' that has not been the subject of state

enforcement action may form the basis of a citizen suit."  No. 2:01-cv-

01725-LSC, slip op. at 13 (N. D. Ala. July 30, 2002) (Doc. 21).  Violations

may be differentiated either by time frame or subject matter.

            i. Preclusion based on time frame.

    Possible preclusion can be divided into three time periods:  1.  the

period before an enforcement action begins; 2.  the period between the

dates covered by an enforcement action and that action's final

resolution; and 3. the period following the conclusion of an enforcement

action.  Suits premised on violations subsequent to an enforcement action

are obviously not precluded.  *See Connecticut Fund for the Env't v. Acme*

*Electro-Plating*, 822 F. Supp. 57, 60 (D. Conn. 1993).  Furthermore, suits

based on violations occurring prior to an enforcement action are

prohibited.  *See Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484

U.S. 49, 59 (1987) ("[T]he harm sought to be addressed by the citizen suit

lies in the present or the future, not in the past.").  In the instant case,

however, all the dates in question fall within the second category.

    The alleged violations in plaintiffs' complaint occurred between the

end of January 2008 and the end of August of the same year.  The

Administrative Order issued by ADEM on September 5, 2008, covers

violations between September 1, 2006 to January 27, 2008.  The key

question before the Court, then, is whether suits regarding violations not

explicitly covered by the Administrative Order but falling within the

period of its drafting and finalization are precluded.

The case law is less than clear on this point. In *Connecticut Fund*

*for the Env't,* the court indicated that all suits premised on violations

before the end of an enforcement action are precluded, writing, "Here,

the state has not commenced an enforcement proceeding against Acme

since 1988. That proceeding was concluded on March 1, 1989 upon entry

of the stipulated judgment. Thus, the scope of the violations addressed

by that enforcement action is limited to violations through March 1, 1989,

and does not include subsequent violations." 822 F. Supp. at 60. In

*Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.*, the court

looked to the prospective nature of an administrative order to reach the

same conclusion as the *Connecticut Fund for the Env't* court. 682 F.

Supp. 1186 (N.D. Ala. 1988). The court wrote,

> ASLF asserts that the administrative order is insufficient to
> prevent the maintenance of a citizen suit for any one of three
> reasons. First, ASLF asserts that the order does not preclude
> citizen suits arising from violations occurring after November
> 1986. ASLF argues that the administrative order only dealt
> with the violations listed in finding of fact number five. Those
> violations occurred during the period from August through

November 1986.  However, the administrative order is clearly
addressed to future violations of the permit in question.  The
violations in finding of fact number five are only illustrative of
the poor compliance history at the Heflin plant.  The order
itself is clearly prospective in nature in that it contemplates
the construction of additions to the wastewater treatment
facilities at the Heflin plant sufficient to bring the plant into
compliance, thereby eliminating future violations. . . .
Therefore, it is clear that the order is intended to address the
violations that ASLF seeks to make the subject of its citizen
suit.

682 F. Supp. at 1187.

In *Jarrett v. Water Works & Sanitary Sewer Bd. of Montgomery*, the

court noted that it is "apparently the ongoing nature of such actions

which brings them within the definition of an action which the state is

'prosecuting.'"  2001 U.S. Dist. LEXIS 522 *12 (M.D. Ala. Jan. 16, 2001)

(explaining *Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.*).  The

Fifth Circuit has also taken this position, arguing, "To allow appellants'

suit to proceed based on continued violations for which the [Department

of Environmental Quality] had already begun to take action would

eviscerate the bar on citizen suits where the state is diligently

prosecuting an action under comparable state law."  *Lockett v. EPA*, 319

F.3d 678, 689 (5th Cir. 2003).

Courts have taken this expansive view of the "diligently prosecuting" language in an effort to uphold the purpose of the Clean Water Act.  The Supreme Court has noted, "The bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action."  *Gwaltney*, 484 U.S. at 60.  With this in mind, courts have rejected suits that contain relief that is duplicative of that found in administrative actions.  *See Sierra Club v. Colorado Refining Co.*, 852 F. Supp. 1476, 1483 (D. Colo. 1994) (quoting  *North & S. Rivers Watershed Ass'n v. Scituate*, 949 F.2d 552, 555-56 (1st Cir. Mass. 1991)).

Given the facts of the instant case, limiting the preclusive effect of 33 U.S.C. § 1319(g)(6)(A) to only those violations explicitly listed in the ADEM Administrative Order would require a cramped reading of that section, one not in line with either the spirit or the letter of the Clean Water Act.  While the ADEM Order referred specifically to violations up to January 27, 2008, the penalties that Order applies are prospective in nature and reflect ongoing violations.  The Administrative Order does not merely punish SDW for violations of its permit.  Instead, it requires that

the company "immediately upon receipt of this Order and continuing thereafter . . . fully implement and maintain temporary BMPs" to correct violations of its permit.  (Doc. 6, Ex. C at 7-8.)  The temporary character of these BMPs underscores the ongoing nature of SDW's violations and the immediate need for correction.  Later in the Order, ADEM requires SDW to submit, within ten days, a detailed plan enumerating SDW's efforts to establish effective BMPs going forward.  *Id.* at 9.  Within twenty days, SDW is required to implement those BMPs, with a certification of compliance to follow five days later.  *Id.*  Therefore, since the Administrative Order clearly contemplates ongoing violations, the Court finds that the actions of ADEM cover the time period up to September 5, 2008.

ii.  Preclusion based on subject matter.

Even though the ADEM Administrative Order may cover the dates of the violations listed in plaintiffs complaint, those violations must cover the same subject matter as the Administrative Order for it to have preclusive effect.  *See Atlantic States Legal Foundation, Inc. v. Montgomery County North Reduction Plant,* 1996 WL 1670982, *5-6 (S.D.

Ohio, March 11, 1996) (finding that administrative remedies for one type of violation do not preclude suit for a different type of violation, even if those remedies eliminate the need for further enforcement); *North & S. Rivers Watershed Ass'n v. Scituate*, 949 F.2d 552, 556 (1st Cir. 1991) ("The focus of the statutory bar to citizen's suits is not on state statutory construction, but on whether corrective action already taken and diligently pursued by the government seeks to remedy the same violations as duplicative civilian action."); *Culbertson v. Coats Am.*, 913 F. Supp. 1572, 1578-79 (N.D. Ga. 1995).  Therefore, the Court will look to see if the violations in question are substantially the same as those covered by the ADEM Administrative Order.

As an initial matter, of the four categories of violations the complaint purports to cover, plaintiffs concede that failure to implement effective BMPs and failure to maintain effective BMPs overlap with ADEM's Administrative Order.  (Doc. 9 at 11-12 n.2.)  This concession leaves claims that discharges of pollutants were not effectively treated to the maximum extent practicable by BMPs and that SDW failed to ensure that BMPs do not cause or contribute to a violation of state water quality

standards.  Plaintiffs claim that there is no overlap between the latter categories of violations and those covered by the ADEM Order.

Plaintiffs' interpretation of the ADEM Order, however, requires an excessively narrow interpretation of the violations and remedies enumerated in that document.  The Order outlines "three broad categories" of violations: 1.  inadequate BMP implementation, maintenance, and effectiveness; 2.  inadequate response; and 3. sediment accumulation and deposition offsite.  (Doc. 6, Ex. C at 7.)  The Order goes on to require  "immediate and future compliance with the AWPCA, applicable ADEM regulations, and all NPDES registration limitations, terms, and conditions for all ADEM NPDES regulated sites/facilities disturbed, operated, owned and/or controlled by the Operator...." (*Id*. at 8.)  Given the expansive coverage of the ADEM Order, plaintiffs' contention that there is no overlap between the final two categories of their complaint and that Order is of no avail.  The ADEM Order is clearly directed at any and all violations at the SDW facility, and those violations are all cognizable under laws and regulations directed at water quality.  In contrast, in *Atlantic States Legal Foundation, Inc. v.*

*Montgomery County North Reduction Plant*, the violations in question were under two different standards, the state of Ohio's air pollution laws and lead limitations enforced by the City of Dayton.  1996 WL 1670982 at *2.  The court determined that the Dayton enforcement action was not comparable to § 1319(g) and therefore not preclusive.  In the instant action, the state has commenced the enforcement action in question for the failure of SDW to comply with its NPDES permit.  The plaintiffs seeks relief for the violations of the same permit.  As the ADEM Administrative Order remedies all violations for which the plaintiffs seek relief, the Court finds that the actions of ADEM cover the same subject matter as plaintiffs' complaint.

      B.    Preclusion and Civil Penalties.

     In limiting civil actions, 33 USC § 1319 addresses the remedy sought as well as the substance of the violations.  33 USC § 1319(g)(6)(A) purports to preclude only a "civil penalty action."  Plaintiffs rely heavily on legislative history to support the position that an action seeking injunctive relief may continue.  The Court notes that legislative history is

neither voted on by Congress nor presented to the President for his

signature.  Justice Scalia put it best,

> [I]t is simply incompatible with democratic government, or
> indeed, even with fair government, to have the meaning of a
> law determined by what the lawgiver meant, rather than by
> what the lawgiver promulgated. That seems to me one step
> worse than the trick the emperor Nero was said to engage in:
> posting edicts high up on the pillars, so that they could not
> easily be read. Government by unexpressed intent is similarly
> tyrannical. It is the law that governs, not the intent of the
> lawgiver.

Antonin Scalia, *Common-Law Courts in a Civil-Law System: The Role of*

*United States Federal Courts in Interpreting the Constitution and Laws*, in

A Matter of Interpretation:  Federal Courts and the Law (Amy Gutmann ed.,

1997) at 17.

Perhaps more importantly, retreating to legislative history is not

necessary in this case, as the language of the statute itself is clear.  Under

the interpretive canon *expressio unis est exclusio alterius*, the specific

inclusion of one principle in a legislative act works to exclude others not

included.  Since 33 USC § 1319(g)(6)(A) clearly states that its preclusive

effect extends to civil penalty actions, civil suits are not precluded to the

extent they seek injunctive and declaratory relief.  *See, e.g., Cahaba River*

*Soc'y,* No. 2:01-cv-01725-LSC at 14-15.   Therefore, to the extent the plaintiffs suit seeks injunctive and declaratory relief, it is not precluded by the ADEM Administrative Order.

V.      Conclusion.

For the reasons stated above, SDW's motion to dismiss will be granted to the extent Plaintiffs seek civil penalties.  SDW's motion to dismiss will be denied to the extent Plaintiffs seek declaratory and injunctive relief.   A separate order will be entered.

Done this 16th day of January 2009.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**